IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Corey Jawan Robinson, ) | |
| ) | Civil Action No. 5:13-cv-2899-JMC |
| Plaintiff, ) | |
| ) | **ORDER AND OPINION** |
| v. ) | |
| ) | |
| Dr. Thomas E. Byrne, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Corey Jawan Robinson ("Plaintiff"), a state prisoner proceeding *pro se*, seeks relief pursuant 42 U.S.C. § 1983. Defendant Dr. Thomas E. Byrne ("Defendant"), is a physician with the South Carolina Department of Corrections.

This matter is before the court on Plaintiff's Motion for Immediate Outside Treatment ("Motion"). (ECF No. 33.) In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(d) (D.S.C.), the matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial handling. On April 22, 2014, the Magistrate Judge issued a Report and Recommendation ("Report") recommending the court deny Plaintiff's Motion. (ECF No. 45.) This review considers Plaintiff's Objection to Report and Recommendation ("Objection"), filed May 1, 2014. (ECF No. 51.) For the reasons set forth herein, the court **ACCEPTS** the Magistrate Judge's Report and hereby **DENIES** Plaintiff's Motion for Immediate Outside Treatment (ECF No. 33).

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is currently incarcerated at Lieber Correctional Institute, and was originally diagnosed with sarcoidosis in 2009. (ECF No. 43-1 at 1–2.) Plaintiff was evaluated by a physician at the University of South Carolina Department of Neurology on May 5, 2010. (ECF

1

No. 43-4.)  The evaluating physician recommended (1) reducing Plaintiff's dosage of prednisone to fifteen milligrams per day; (2) referring Plaintiff to a rheumatologist "for mainstay of sarcoid treatment[;]" (3) supplementing Plaintiff's diet with Ensure to help with weight loss; and (4) scheduling a follow-up for Plaintiff three months after the initial consultation.  (*Id.*)   According to Plaintiff's medical record, Plaintiff was "already on [a] tapering dose" of ten milligrams of prednisone per day by May 6, 2010, and Plaintiff was scheduled to complete his prednisone treatment by July 31, 2010.  (*Id.*)  An x-ray of Plaintiff's chest performed on June 6, 2010, revealed that Plaintiff's lungs were "normally expanded and clear" and there were "[n]o pleural abnormalities . . . ."  (ECF No. 51-1 at 2.)

Plaintiff's medical record indicates that a neurologist last saw him on August 28, 2013, and that the neurologist suggested Plaintiff begin seeing a pulmonologist.  (ECF No. 51-1 at 4.) Plaintiff received a chest x-ray on December 11, 2013, which revealed some "faint scarring" and a "[s]mall chronic left pleural effusion or chronic pleural thickening[,]" but his lungs were "otherwise clear." (*Id.* at 3.)  Plaintiff's medical record further indicates that, as of January 24, 2014, Plaintiff's lungs were clear and Plaintiff was not suffering from any difficulty breathing. (ECF No. 51-2 at 1.)

In his Declaration to Support Reply Motion for Immediate Outside Treatment ("Declaration"), Plaintiff states (1) that Defendant continued to prescribe prednisone after July 31, 2010; (2) Plaintiff refused to take his medication during the month of October 2011; (3) on November 16, 2011, Plaintiff "wanted to be placed back on prednisone" and that his prescription was renewed on November 5, 2011; and (4) Defendant interfered with Plaintiff's medical treatment because Defendant did not follow the outside neurologist's recommendations.  (ECF No. 43-1 at 2.)  Plaintiff maintains that Defendant has also interfered with Plaintiff's sarcoidosis

treatment by not having routine lung function tests performed, and by not arranging appointments for Plaintiff with specialized doctors. (*Id.* at 1.)

In addition to his Motion and Declaration, Plaintiff offers the affidavit of his fellow inmate, Jemel Scriven (ECF No. 43-2), along with Defendant's Answers to Plaintiff's Motion for Interogatories (ECF No. 43-3), and a printout of the National Heart, Lung, and Blood Institute's ("NHLBI") webpage describing sarciodosis (ECF No 43-4 at 2–7) as support for his position.

In her Report the Magistrate Judge found that Plaintiff failed to prove either (1) that he will suffer irreparable harm in the absence of injunctive relief, or (2) that he is likely to succeed on the merits of his complaint. (ECF No. 45 at 2.) The Magistrate Judge further found that neither the medical records nor the affidavits of the doctors supported Plaintiff's allegations, and that the evidence offered by Plaintiff was insufficient to warrant the grant of injunctive relief. (*Id.* at 2–3.) Plaintiff timely filed his Objection on May 1, 2014. (ECF No. 51 at 1.)

## II. LEGAL STANDARD AND ANALYSIS

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(d) (D.S.C.). The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Matthews v. Weber*, 423 U.S. 261, 270–71 (1976). This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

Objections to a Report and Recommendation must specifically identify portions of the recommendation and the basis for those objections. Fed. R. Civ. P. 72(b). "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). "[W]hen objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (citing *Braxton v. Estelle*, 641 F.2d 392 (5th Cir. 1981)).

*De novo* review is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpino*, 687 F.2d at 47 (citing *United States v. Mertz*, 376 U.S. 192, 84 S. Ct. 639, 11 L.Ed.2d 629 (1964); *Pendleton v. Rumsfeld*, 628 F.2d 102 (D.C. Cir. 1980)). Furthermore, failure to timely file specific written objections to a recommendation will result in a waiver of the right to appeal from an order from the court based upon the recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

As Plaintiff is a *pro se* litigant, the court is required to liberally construe his arguments. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The court addresses those arguments that, under the mandated liberal construction, it has reasonably found to state a claim. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). However, the court will "not 'assume the role of advocate for the *pro se* litigant.'" *Id*. (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

**A. Sufficiency of evidence presented by Plaintiff to warrant the grant of injunctive relief.**

Plaintiff does not object to the Magistrate construing Plaintiff's Motion as a motion for injunctive relief. Plaintiff does object to the Magistrate Judge's finding that the evidence presented by Plaintiff is "insufficient . . . to warrant the grant of injunctive relief." (ECF 45 at 3.) Plaintiff does not offer any new evidence or legal argument to support his position but merely points to evidence already considered by the Magistrate Judge. (ECF No. 51.)

"Federal decisions have uniformly characterized the grant of interim relief as an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (quoting *Warner Bros. Pictures, Inc. v. Gittone*, 110 F.2d 292, 293 (3d Cir.1940)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).

Plaintiff has cited to the printout of the NHLBI webpage describing sarcoidosis (ECF No. 43-4 at 2–7) in support of his contention that sarcoidosis should be treated by medicines other than prednisone. (ECF No. 43-1 at 3–4.) The printout cited by Plaintiff clearly states that "prednisone . . . is the main treatment for sarcoidosis . . . ." and that "most people need to take prednisone for twelve months or longer . . . ." (ECF No. 43-4 at 4.) While "more than half of the people diagnosed with sarcoidosis have remission within [three] years of diagnosis[,]" only two-thirds of people with sarcoidosis "have remission within [ten] years." (*Id.* at 1.)

The NHLBI states that "[l]ong-term use of prednisone, especially at high doses, can cause serious side effects." (*Id.* at 4.) Other medications, including immunosuppressants and anti-malarial drugs, are available to treat patients who suffer adverse side-effects from prednisone or whose sarcoidosis does not improve while on prednisone. (*Id.* at 4–5.)

The NHLBI printout is also cited by Plaintiff for the proposition that Defendant has intentionally interfered with the treatment of Plaintiff's sarcoidosis. (ECF No. 43-1 at 4.) The NHLBI lists a number of tests that a physician may order when diagnosing sarcoidosis, including, among others, chest x-rays and lung function tests. (ECG No. 43-4 at 2.) The printout states that doctors may also order other routine tests when treating a patient with sarcoidosis, and that patients should discuss their ongoing care with their doctor. (*Id.* at 5.)

The evidence offered by Plaintiff indicates that the physicians with the South Carolina Department of Corrections had already reduced Plaintiff's dosage of prednisone to ten milligrams per day before the neurologist with the University of South Carolina recommended a fifteen milligram per day dosage. (ECF No. 43-4.) Furthermore, Plaintiff is currently in contact with his physicians as evidenced by the correspondence attached to his original Motion, (ECF No. 33-1 at 1, 2), and the extensive medical record attached to his Objection. (ECF No. 51-2.)

In this case, the evidence does not establish that Plaintiff is likely to succeed on the merits of his claim or that he is likely to suffer irreparable harm. Plaintiff has merely stated that there are alternatives to his course of treatment, and that the Department of Corrections' physician treating Plaintiff has followed a different course of treatment than the course recommended by an outside neurologist. Plaintiff has not offered any evidence that prolonged treatment with prednisone has detrimentally affected him, nor has he offered any evidence that would suggest that he could prevail on the merits of the case.

## IV. CONCLUSION

Based on the aforementioned reasons and a thorough review of the Report and Recommendation of the Magistrate Judge and the record of this case, the court **DENIES** Plaintiff's Motion for Immediate Outside Treatment. (ECF No. 33). The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 45) and incorporates it herein by reference.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

February 2, 2015
Columbia, South Carolina